cide upon the merits of the controversy as to whether or not there was personal service upon the defendants, or as to whether or not they had appeared in the action in such a manner as to be equivalent to a general appearance. It is sufficient to say that there is no authority given in the Municipal Court act to vacate a judgment for nonservice of a summons where the defendant has not appeared. Section 253 of the Municipal Court act (Laws 1902, p. 1562, c. 580), provides for the opening of a default; but a defendant cannot be said to be in default if he has never been served with process, and has never appeared in the action, and the defendants make no claim of having been in default, and ask for no relief under that section. Section 254 of the Municipal Court act provides for the making of a motion to vacate a judgment "at the close of the trial," etc., upon the several grounds specified therein; but that section contemplates a motion of that character after a trial of the issues, and not in the case of an inquest, or a case where the defendant has not appeared. The intent and scope of that section is indicated by the provision that "the judge who presided at the trial may make the order," etc. "The statute as it appears has conferred no power to set aside judgments upon the ground that they were rendered without jurisdiction because the summons was not served upon the defendant." Spiropulos v. Magnioni (Dec. Term; Appellate Term, 1905, not yet officially reported) 96 N. Y. Supp. 438. It follows, therefore, that the judge who entertained the motion in the case at bar was without authority, and the order granted by him must be reversed. The defendants have their remedy under the provisions of section 311 of the Municipal Court act. Austen v. Columbia Lubricants Co. (Sup.) 85 N. Y. Supp. 362.

Order reversed, with costs. All concur.

---

### CENTRAL BREWING CO. v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term. February 27, 1906.)

1. STREET RAILWAY—INJURY TO VEHICLE—NEGLIGENCE—EVIDENCE—QUESTIONS FOR JURY.

Evidence as to the striking of a truck by a street car *held* sufficient to take the question of the company's negligence to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Evidence as to the failure of a truck driver to look out for an approaching street car *held* insufficient to take the case from the jury, as a failure to prove lack of contributory negligence.

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by the Central Brewing Company against the New York City Railway Company. From a judgment in favor of defendant, plaintiff appeals. Reversed, and new trial granted.

Argued before SCOTT, P. J., and GIEGERICH and GREENBAUM, JJ.

Mark Goldberg (Louis Wertheimer, of counsel), for appellant. William E. Weaver, for respondent.

97 N.Y.S.—65

SCOTT, P. J. The evidence showed that a heavy truck belonging to plaintiff was driven onto defendant's downtown track in Lexington avenue at Sixty-Second street. It proceeded safely at a walk down the avenue, on the westerly south-bound track, until it arrived at Sixty-First street, when it attempted to turn to the westward into Sixty-First street. The horses had been brought clear into the side street, and the truck had been partly turned in the same direction, and was about to leave the track entirely, when a south-bound car belonging to the defendant ran into the truck, overturning and damaging it. The court dismissed the complaint, upon the ground that plaintiff had failed to show the defendant's negligence, or a lack of contributory negligence on the part of the driver of the truck.

In our opinion the circumstances created such a presumption of negligence on defendant's part that it should have been put to its defense. There have been very many cases in which a railroad company has been held free from fault for a collision between a car and a vehicle driven onto the track, but there is a vast difference between that case and one in which the collision occurs while the vehicle is leaving the track. In the present case the truck had gone onto the track safely, and had proceeded along it safely for a whole block. The day was clear and bright, and the inference is that the motorman must have seen the truck in front of him. To turn off the track did not create any more dangerous situation than had existed before the truck began to turn off. Assuming that the motorman saw the truck on the track ahead of him, if it had stayed on the track he would not have been justified in running into it, and the fact that it attempted to get out of his way did not justify him in so doing. It is said that the car had the paramount right of way so far as the track was concerned. If this is so, the truck should have got off the track, and it was doing this when it was overturned. It is urged that the driver did not look back before he turned off. It is not apparent that it would have done any good if he had. If he had been driving onto the track, and thus passing from a position of safety to one of possible danger, he should, of course, have looked out for the car. But he was driving off the track, from a position of possible collision to one of safety. The act of turning off did not increase the danger, and, if the driver had looked back and seen the car near him, he could have done only what he did, unless he had stayed on the track directly in the way of the approaching car. We are of opinion that enough appeared to justify the submission of the case to the jury.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.